DARLING-McDUFF COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19866.    Promulgated January 29, 1929.

*William A. Needham, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

112

OPINION.

TRUSSELL: We are unable to determine from the record in this case exactly upon what theory respondent determined petitioner's income to be properly returnable upon a fiscal year basis, as the deficiency letter attached to the petition throws no light on that question, the answer filed admits only some formally essential facts and makes a general denial of other allegations, and no brief was submitted by him.

With respect to the calendar year 1921, the record shows clearly that petitioner closed its books as of December 31, and there is no fact proved which indicates that such action did not correctly reflect its income. It is further shown that it made its return for that period and paid a tax, and there is no indication from the record that this action was not in good faith. This being the case it is evident that, irrespective of the question as to whether a change to a fiscal year basis occurred after this time, no deficiency for this period could, under section 277 of the Revenue Act of 1926, be assessed after

the expiration of four years from March 11, 1922, the date on which petitioner filed its return for that year, there being no evidence that the four-year period was extended by waiver. The deficiency appealed from herein was determined and advised of on July 13, 1926. On that date assessment and collection of an additional tax for the period covered by the return filed was barred. *Mabel Elevator Co.*, 2 B. T. A. 517; *United States* v. *Mabel Elevator Co.*, 17 Fed. (2d) 109.

We are not advised as to whether respondent has computed petitioner's income on the fiscal year basis upon a determination that the books were actually kept upon such basis oi upon a determination that the books, though kept upon a calendar year basis, did not correctly reflect income, and a change to the fiscal year was accordingly necessary. Any assumption that respondent has acted upon the second theory mentioned must, however, be disregarded, in view of the testimony that no change in petitioner's accounting method has been directed by respondent, and it would therefore seem that the position taken by respondent is that the books as kept were actually upon the basis of a fiscal year ending April 30, and that the returns should accordingly have been upon that basis. If that is a fact respondent's right to so compute petitioner's income is unquestioned except with respect to the calendar year 1921.

The only facts shown in the record which might indicate that the books were kept on other than a calendar year basis were (a) the distribution on April 30 of each year to the various asset accounts of the total depreciation charged against profit and loss as of the close of the prior calendar year, (b) the fact that amounts credited to reserve for bad debts were entered as of April 30, 1923 and 1924, and (c) the fact that the annual stockholders' meeting of the company was held in May of each year and a statement of the condition of the company made up as of that time.

On the other hand, the record shows that the depreciation and accrued officers' salaries were charged against profit and loss as of December 31 and the books actually closed on that date, the balance taken reflecting all income received and expenses paid or accrued as pertaining to that calendar year. The distribution on April 30 to the asset accounts of the total of depreciation charged off at the close of the prior calendar year was not a primary entry reflected in profit and loss. In fact, it was not an entry necessary to be made as it could have been postponed until the amounts charged off in each year equaled the total of the particular asset balance. Also, the crediting to the bad debt reserve on April 30, 1923 and 1924, of the estimated amount of bad debts for that year is not a fact which in itself shows the year to have been closed as of that date. The books

must be actually closed with all proper debit and credit items reflected and this does not appear to have been the case.

The mere holding of the annual meeting at some time other than the close of the calendar year and the taking of a balance at that time for the information of directors and stockholders is not sufficient to show that a taxpayer is upon a fiscal year basis when it is shown that the books are also closed as of the end of the calendar year, and its income-tax returns have always been made upon the basis of such a year. In *Marlboro Fertilizer Co.*, 3 B. T. A. 82, the annual meeting of the taxpayer was held on July 1 of each year and for convenience the profit and loss account was ruled down June 30 of each year to disclose the then book profits. However, the books were actually closed as of December 31 and the petitioner's tax return was made on the basis of the calendar year. In this case we held that the books were kept on a calendar year basis as the closing on December 31 took into account all the necessary factors and the transfer to surplus was made as of that time.

In *Pittsburgh Bridge & Iron Works, Inc.* v. *Heiner*, 25 Fed (2d) 900, sustaining the taxpayer's return of income on a calendar year basis, even though its books were ruled off as if closed on May 31 of each year, the court said:

> While the books of the corporation were ruled off as if closed on a yearly period ending May 31st, of each year, the witness testified that he considered that the books of the company were on a monthly basis, because an accurate profit and loss statement, as well as a balance sheet, were taken off each month, and these statements were preserved as original records of the company. * * *
>
> The method adopted by the plaintiff must be regarded with favor because it was the method continuously adopted for the period of ten years or more, and exhibiting to the Board of Directors, who were vitally interested in knowing the exact financial condition of the company, the profit and loss from month to month. It is entirely clear that the return for 1917, was a calendar year return. I am by no means satisfied that the method adopted by the Commissioner of taking two full fiscal years and then obtaining a calendar year return by taking 5/12ths of 1917, and 7/12ths of 1918, reflects with as much accuracy, the true net income for the year 1917, as that shown by the plaintiff's return. As no evidence was offered on the part of the defendant, there was no effort to justify the arbitrary allocation of income.

Neither one of the three conditions mentioned is sufficient to show petitioner as on a fiscal year basis and these facts taken in connection with one another do not show such to have been the case. The books could not have been closed at April 30 of each year and the true profit or loss for the preceding 12 months determined without an entry of depreciation and officers' accrued salaries computed to that date, and no such entry was made. We hold that petitioner for the periods in evidence, kept its books upon the basis of a calendar year and that its income was properly reflected thereby.

In respect to the issue raised upon respondent's action in disallowing certain depreciation taken, petitioner has merely introduced very general evidence as to the character of the assets involved. There is nothing upon which we may determine a correct rate for depreciation, the only facts before us being that the buildings were frame, the trestle of heavy timber, and that upon these assets and certain railroad track, petitioner had taken depreciation at a rate of 10 per cent and that these facilities were 6 years old when acquired by petitioner. In the absence of any proof as to the remaining life of the assets upon acquisition by petitioner the determination of the Commissioner of a rate of 5 per cent is approved.

Petitioner took no credit for bad debts until the year 1923, in which it set up a reserve in the sum of $400, which amount it deducted on its income-tax return for that calendar year. For the calendar years 1924 and 1925 it took credit for additions to its reserve of $200 and $300, respectively. It did not charge against the reserve any bad debts until the year 1925, in which year $714.36 was so charged, which was an aggregate of bad debts representing an accumulation from the period from the beginning of the business in 1921. For the two years 1923 and 1924, in question, petitioner had accounts and notes receivable in totals of $23,491.92 and $35,645.99, respectively. Petitioner was entitled to set up a reserve for bad debts and the estimated amounts added to the reserve in the two years do not appear to be unreasonable, considering the total amounts of its accounts and notes receivable. It is entitled to credit in these two calendar years for these additions to its bad debt reserve.

The deficiencies for the years 1922, 1923, and 1924 should be redetermined in accord with the foregoing findings of fact and opinion.

*Judgment will be entered pursuant to Rule 50.*